1

2

3

4

5

6

7

8                        **IN THE UNITED STATES DISTRICT COURT**

9                       **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   TYLER CHRISTOPER SCHWEIZER,              No.  2:20-CV-0517-JAM-DMC-P

12                          Petitioner,

13          v.                               FINDINGS AND RECOMMENDATIONS

14   SUZANNE M. PEERY,[1]

15                          Respondent.

16

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus under 28 U.S.C. § 2254. Pending before the Court are Petitioner's petition for a

19   writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 14, and Petitioner's traverse,

20   ECF No. 15.

21   / / /

22   / / /

23   / / /

24   / / /

25   _____

             [1]       Petitioner named "California Department of Corrections Rehabilitation CCC
26   (Warden)" as the Respondent in his petition for writ of habeas corpus. ECF No. 1. Suzanne M.
     Perry is the Warden of the California Correctional Center where Petitioner was held at the time of
27   filing, and so is the proper Respondent in this action pursuant to Rule 2(a) of the Rules Governing
     Section 2254 Cases in the United States District Courts. In response to the request of
     Respondent's counsel, this Court has substituted Suzanne M. Peery as the Respondent in this
28   matter. *See* ECF No. 14, n. 1; Fed. R. Civ. P. 25(d).

# I. BACKGROUND

A.      **Facts**[2]

The California Court of Appeal recited the following facts in its decision on direct appeal, and Petitioner adopts the facts as stated. See ECF No. 15 at 1.

### The Charged Incident

The fatal collision occurred around 10 in the morning. It was a clear and sunny day, the roads were dry, and few cars were out. Defendant was driving his 2004 Chevrolet Silverado pickup truck on a highway with a 60-mph speed limit. The highway had two lanes in each direction.

Another driver, going about 60 mph in the fast lane, was passed by defendant. The driver described being passed as, "[l]ike I was standing still. Somebody flew by me, and I wasn't moving." That driver then saw, in the distance, the victim's truck entering the highway via an intersecting road.

Defendant swerved, trying to avoid the victim's truck. Then, just before impact, defendant hit the brakes. Defendant's truck collided with the victim's truck. The victim was killed.

An accident investigation determined defendant's truck hit the victim's truck at 60.42 mph. When defendant's truck began leaving skid marks, it was moving at 89.26 mph. The airbag control module recorded defendant's speed in the five seconds before the crash. Five seconds before impact, he was going 98.2 mph; four and three seconds before, his speed was 99.37 mph; two seconds before, he slowed to 87.68 mph; and one second before the crash, his speed was 66.63 mph.[1]

Defendant's truck was fitted with oversized 37-inch tires, which caused the speedometer to indicate a slower speed than the truck was actually moving. The accident investigator corrected for the oversized tires when determining defendant's speed.

Investigating officers found no evidence defendant was intoxicated.

### Defendant's priors

At trial, the jury heard evidence of three past driving incidents involving defendant. In 2009, an officer saw defendant driving 55 mph in a 45-mph zone and pulled him over. Defendant was arrested for driving under the influence and for driving without a license. He was given probation and ordered to serve two days in jail.

---

[2]      Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

2

In February of 2011, an officer heard the sound of a car either speeding or rapidly accelerating, followed by the sound of a large crash. The officer found a car crashed into an unoccupied truck on a residential street with a 25-mph speed limit. The officer believed defendant, the driver, was under the influence of amphetamine. Defendant was given probation and ordered to serve 10 days in jail.

Six months later, an officer tried to pull defendant over in a residential area with a 25-mph speed limit. Defendant accelerated to 70 mph, leading the officer on a chase. Defendant drove on both sides of the road, nearly hitting several parked cars. When he reached a dead end, he braked hard and spun 180 degrees. Then going 20 to 25 mph he drove into the officer's squad car's push bumper, knocking it several feet. He accelerated to about 80 mph, driving on both sides of the road, and swerved into oncoming traffic. He then accelerated to 100 mph. He was eventually stopped with a spike strip. He was given probation and ordered to serve 253 days in jail.

ECF No. 12-8, pgs. 1-2.

**B.** **Procedural History**

Petitioner was convicted in Shasta County Superior Court on one count of second-degree murder and one count of gross vehicular manslaughter. See ECF No. 12-8; see also ECF Nos. 1; 14. The trial court sentenced Petitioner to a 15-years-to-life term in state prison. See ECF No. 12-8 at 2. Petitioner appealed to the California Court of Appeal, challenging the sufficiency of the evidence to support the implied malice element of second-degree murder. See Id. at 3. The Court of Appeal affirmed the conviction and sentence. See Id. The California Supreme Court denied review. See ECF No. 1 at 2-3; see also ECF No. 12-10.


**II. STANDARDS OF REVIEW**

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the

AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

4

created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

## III. DISCUSSION

In his federal petition, Petitioner claims that the evidence was insufficient to support the implied malice element of second-degree murder.

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that, upon the record of evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).[3] Under Jackson,

---

[3] Even though Jackson was decided before AEDPA's effective date, this expression of the law is valid under AEDPA's standard of federal habeas corpus review. A state court decision denying relief in the face of a record establishing that no rational jury could have found proof of guilt beyond a reasonable doubt would be either contrary to or an unreasonable application of the law as outlined in Jackson. Cf. Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (denying habeas relief on sufficiency of the evidence claim under AEDPA standard of review because a rational jury could make the finding at issue).

the court must review the entire record when the sufficiency of the evidence is challenged on

habeas.  See id.  It is the province of the jury to "resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  "The question

is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational

jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d

303, 306 (9th Cir. 1991); see also Herrera v. Collins, 506 U.S. 390, 401-02 (1993).  The federal

habeas court determines sufficiency of the evidence in the context of the substantive elements of

the criminal offense, as defined by state law.  See Jackson, 443 U.S. at 324 n.16.

In rejecting this claim on direct appeal, the California Court of Appeal stated:

On appeal, defendant challenges the sufficiency of the evidence to support
the implied malice element of second degree murder.

Unlike vehicular manslaughter, which requires gross negligence, second
degree murder requires malice, which may be implied where the defendant
knows his conduct endangers the life of another but "nonetheless acts
deliberately with conscious disregard for life." (*People v. Watson* (1981)
30 Cal.3d 290, 296.) Implied malice requires a higher degree of culpability
and involves an element of wantonness not present in gross negligence.
(*Ibid.*) Implied malice contemplates a subjective awareness of a higher
degree of risk than gross negligence. (*Ibid.*)

Different tests determine the existence of gross negligence and implied
malice. (*People v. Watson*, supra, 30 Cal.3d at p. 296.) Gross negligence
exists if a reasonable person in the defendant's position would have been
aware of the risk. (*Ibid.*) By contrast, implied malice exists if the
defendant actually appreciated the risk. (*Id.* at pp. 296-297.) These states
of mind have been articulated as "I don't care what happens" for gross
negligence, and "I know my conduct is dangerous to others, but I don't
care if someone is hurt or killed" for implied malice. (*People v. Olivas*
(1985) 172 Cal.App.3d 984, 987-988.)

Here, defendant contends insufficient evidence supported a finding of
implied malice, maintaining his case is no more than vehicular
manslaughter. He argues he lacked the hallmarks of implied malice seen in
reported decisions. He points to, inter alia, the lack of evidence he was
intoxicated, driving an unsafe truck, crossing a double yellow line,
running a signal, driving on the wrong side, or racing. He notes he made
no callous statements about the victim after the collision and said nothing
to reflect subjective awareness his driving was dangerous. Further, the
highway was a straightaway with dry pavement and good visibility, and he
was not on a city or residential street with a lower speed limit. He tried to
avoid the collision--showing awareness of and concern for others' safety.
His prior offenses involved no injury and thus failed to show his
awareness of risk of death. Finally, he maintains the victim substantially
contributed to the crash by slowly entering the highway and failing to

notice defendant's approaching truck. We cannot agree.

Where the sufficiency of evidence is challenged on appeal, we review the record in the light most favorable to the judgment, to determine whether it discloses substantial evidence. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) Substantial evidence is evidence that is "reasonable, credible and solid value--from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Ibid.*) From the evidence, we draw all inferences supporting the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Before the judgment can be set aside for insufficient evidence, "it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

Here, substantial evidence supports the verdict in that a reasonable jury could conclude defendant understood the risks but nonetheless acted deliberately with conscious disregard for life. Defendant drove his truck nearly 100 mph, in a 60-mph zone. Doing so, he passed another car at such speed the other driver described it as like he was standing still. And defendant had thrice served jail terms for dangerous driving. The fact that defendant did not engage in behavior seen in other implied malice driving cases does not render his conduct insufficient to support an implied malice finding. (See *People v. Moore* (2010) 187 Cal.App.4th 937, 942 [though other cases have factors not present here, those cases do not hold that implied malice could not be found in their absence].) Similarly, that defendant swerved and braked just before impact does not preclude a finding of implied malice--nor does defendant's attempt to foist blame on the victim.

ECF No. 12-8, pgs. 3-4.

Respondent argues that the state court's determination is neither contrary to nor based on an unreasonable application of clearly established federal law. See ECF No. 14, pg. 13. Specifically, Respondent contends:

The decision was not "objectively unreasonable." As the state court noted, not only did Petitioner "dr[i]ve his truck nearly 100 mph, in a 60-mph zone," and "pass[] another car at such speed the other driver described it as like he was standing still" in the moments leading up to the fatal crash, ECF 12-8 at *3, he did all this after he had "thrice served jail terms for dangerous driving," *id.* A fairminded jurist could agree that this evidence of Petitioner's conduct combined with evidence of what he had previously experienced sufficed for a rational trier of fact to conclude that Petitioner knew he was driving in a dangerous manner but did not care that he might hurt or kill someone. *See Richter*, 562 U.S. at 101.

Insofar as Petitioner attempts to re-argue the evidence by incorporating arguments raised in and rejected by the state courts, he engages in "fine-grained factual parsing" that "[t]h[e] deferential standard [of review on habeas] does not permit." *Johnson*, 566 U.S. at 655. At any rate, "a reviewing court 'faced with a record of historical facts that support conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in

8

favor of the prosecution, and must defer to that resolution.' " *Smith*, 565 U.S. at 7 (quoting *Jackson*, 443 U.S. at 326)). Here, then, this Court must recognize that the jury "resolved any . . . conflicts in favor of the prosecution" when it squarely considered, and explicitly rejected, the notion that Petitioner's mental state was so obviously at the level of gross negligence as to compel a concession, but still did not reach the level of implied malice.

       Rejecting the insufficient evidence claim was not objectively unreasonable.

ECF No. 14, pgs. 13-14.

Petitioner's claim that the evidence is insufficient is premised on his assertion that he never demonstrated premeditation or actual intent to cause injury. See ECF No. 15, pg. 2. As the state court observed, however, the element of malice does not require premeditation or actual intent. Malice "may be implied where the defendant knows his conduct endangers the life of another but 'nonetheless acts deliberately with conscious disregard for life.' (People v. Watson (1981) 30 Cal.3d 90, 296.)." ECF No. 12-8, pg. 3.

Petitioner was charged with second-degree murder under California Penal Code § 187(a). Section 187(a) states: "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." The trial court instructed the jury pursuant to CALCRIM No. 520 – an instruction Petitioner does not challenge – that guilt required proof beyond a reasonable doubt of the following elements: (1) the defendant committed an act that caused the death of another person; and (2) when the defendant acted, he had a state of mind called malice aforethought. See ECF No. 12-3, pg. 205. The jury was also instructed pursuant to CALCRIM No. 520 that the defendant acted with implied malice if: (1) he intentionally committed an act; (2) the natural and probable consequences of the act were dangerous to human life; (3) at the time he acted, he knew his act was dangerous to human life; and (4) he deliberately acted with conscious disregard for human life. See id. Petitioner does not challenge this instruction nor does Petitioner contest that the first element of Section 187(a) was established. Thus, the issue is whether there was sufficient evidence to allow the jury to find implied malice.

/ / /

/ / /

/ / /

Based on the facts recited by the state court, it was adduced at trial that Petitioner drove his truck in excess of 99 mph on a highway with a speed limit of 60 mph. As the victim entered the highway from an intersecting road, Petitioner swerved to avoid the collision and then hit the brakes just before impact. Petitioner collided with the victim's truck, killing the victim. An accident investigation determined that Petitioner was driving 99.37 mph three seconds before impact and 60.42 mph at the moment of impact. It was also adduced at trial that Petitioner had three past driving incidents. Most recently, four years prior to this incident, Petitioner led police on a chase at a speed of 100 mph.

This Court agrees with the state court that, when viewed in the light most favorable to the prosecution, the evidence is sufficient to allow a rational jury to find implied malice. A reasonable jury could conclude from the facts adduced at trial that Petitioner acted with conscious disregard for human life. A reasonable jury could conclude that Petitioner intentionally drove his truck at a speed of 99 mph, satisfying the first element of implied malice – that Petitioner intentionally commits an act. A reasonable jury could also conclude that the natural and probable consequences of driving a truck at 99 mph were dangerous to human life, satisfying the second element. A jury could further conclude that Petitioner knew his driving was dangerous to human life, satisfying the third element. Finally, a reasonable jury could conclude that Petitioner deliberately acted with conscious disregard for human life, satisfying the fourth element of implied malice. Thus, a reasonable jury could find that Petitioner committed an act causing the death of another person and did so with a state of mind called malice aforethought, satisfying the elements of second-degree murder.

Given the facts recited by the state court, this Court cannot say that the state court's determination is either contrary to or based on an unreasonable application of clearly established federal law.

/ / /

/ / /

/ / /

/ / /

# IV. CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 29, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE